UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James A. Gregg, | Case No. 21-cv-2767 (WMW/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Daniel Basile, | |
| Defendant. | |

James A. Gregg, Reg. No. 12699-073, FMC Rochester, PMB 4000, Rochester, MN 55903 (pro se Plaintiff); and

Gregory G. Brooker, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

## I. INTRODUCTION

This matter is before the Court on Defendant Daniel Basile's Motion to Dismiss, ECF No. 29. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Wilhelmina M. Wright, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. Notwithstanding the extension requested by pro se Plaintiff James A. Gregg and granted by the Court, *see* ECF Nos. 34, 35, Plaintiff has not responded to Defendant's motion. Based upon the record, memoranda, and proceedings herein, it is recommended that Defendant's motion be granted.

## II. BACKGROUND

Plaintiff is confined at the federal medical center located in Rochester, Minnesota

1

("FMC-Rochester"), and practices the "Odinnist/Asatru" faith. *Gregg II* Compl. at 7, ECF No. 1.[1] Plaintiff alleges that Defendant, who is the chaplain at FMC-Rochester, has discriminated against his religion and retaliated against him for filing grievances. *Gregg II* Compl. at 7. Plaintiff brings this action for violations of his constitutional rights pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

### A. *Gregg I*

This is not Plaintiff's first *Bivens* action against Defendant for alleged violations of his constitutional rights. Previously, in *Gregg v. Kallis et al.*, No. 21-cv-1180 (MJD/JFD) (which the Court will refer to as *Gregg I*), Plaintiff

> assert[ed] that he is the designated inmate representative for the Asatru/Odinnist religious community at FMC-Rochester. (Am. Compl. Ex. at 5, Dkt. No. 28-1.) He allege[d] that [Defendant] received timely notice of a religious observance but failed to schedule and facilitate the observance. (Am. Compl. ¶ 7.) [Defendant] also allegedly limited [Plaintiff's] choice of religious medallions to "a selection of 3 pewter costume jewelry Mjolnir medallions," which did not meet his religious needs, while observers of other religions allegedly have been allowed to choose medallions made from metals such as silver. (*Id.* ¶ 8.) A meeting between [Defendant] and [Plaintiff] was unproductive, and [Plaintiff] felt [Defendant] was unprofessional and insensitive. (*Id.* ¶ 10.) [Plaintiff] accuse[d Defendant] of falsely asserting that the Odinist feast of Einherjar was not an official or mandatory religious observance and that [Plaintiff] failed to request the religious observance 30 days in advance. (*Id.* ¶¶ 11–14.) [Plaintiff] further accuse[d Defendant] of not following the Bureau of Prisons ("BOP") Central Office guidance in implementing a ceremonial meal procedure for the High Feast of Yule. (*Id.* ¶

---

[1] The Court uses the pagination generated by the Court's electronic filing system and refers to the instant action as *Gregg II*. *See infra* Section II.C.

2

15.)

> [Plaintiff] believe[d] that [Defendant wa]s favoring the Catholic religion over [Plaintiff's] religion. (*Id.* ¶ 17.) In addition, [Plaintiff] allege[d] that in June 2021 [Defendant] attempted to destroy a sacred juniper bush in an outdoor worship area. (*Id.* ¶ 18.)

2022 WL 479296, at *1 (D. Minn. Jan. 6, 2022), *report and recommendation adopted*, 2022 WL 484965 (D. Minn. Feb. 16, 2022).

Plaintiff's claims in *Gregg I* were construed as raising First Amendment claims under *Bivens*. *See id.* at *1, 3-5. The magistrate judge noted the Supreme Court has "made it clear that expanding the *Bivens* remedy is now a disfavored judicial activity, and has consistently refused to extend *Bivens* liability to any new context." *Id.* at *3 (quotations and citations omitted). The magistrate judge observed that "[t]he Supreme Court has not recognized an implied cause of action under *Bivens* for First Amendment claims," *id.* at *4 (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)), and "[t]he Eighth Circuit Court of Appeals has left the question 'for another day,'" *id.* (quoting *Gonzales v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020)). The magistrate judge further observed that "[s]everal other circuit courts of appeal have declined to extend *Bivens* to the First Amendment context," *id.* (citing cases), and "[c]ourts in the District of Minnesota and other districts in the Eighth Circuit have determined that First Amendment claims are not cognizable *Bivens* claims," *id.* (citing cases).

The magistrate judge in *Gregg I* concluded that Plaintiff's "First Amendment claims ar[o]se in a new context because the Supreme Court has not recognized a *Bivens* remedy for a First Amendment claim." *Id.*; *see Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859

3

(2017) ("The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."); *see also Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022). The magistrate judge reasoned that there were "several factors [that] counsel[ed] against implying a new *Bivens* cause of action." *Gregg I*, 2022 WL 479296, at *4; *see Ziglar*, 137 S. Ct. at 1857 ("The Court's precedents now make clear that a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress." (quotation omitted)); *see also Egbert*, 142 S. Ct. at 1803. "First, the Prison Litigation Reform Act's 'restrictive provisions with respect to prisoner litigation [we]re a special factor counseling hesitation when deciding whether to create a new cause of action for prisoners.'" *Gregg I*, 2022 WL 479296, at *4 (quoting *Brown v. Cooper*, No. 18-cv-219 (DSD/BRT), 2018 WL 6977594, at *13 (D. Minn. Dec. 11, 2018), *report and recommendation adopted*, 2019 WL 121943 (D. Minn. Jan. 7, 2019)). "Second, [Plaintiff's] claims implicate[d] BOP policies concerning religious observances, grievances, and administrative remedies, which counsel[ed] hesitation." *Id.* "Third, 'BOP officials faced with the expanded possibility of personal liability may act differently with respect to these issues when dealing with inmates in BOP custody,' and 'courts should consider defense costs created by claims against federal officials.'" *Id.* (quoting *Brown*, 2018 WL 6977594, at *13); *see also Egbert*, 142 S. Ct. at 1807; *Ziglar*, 137 S. Ct. at 1858.

The magistrate judge also declined to follow *Boule v. Egbert*, in which the Ninth Circuit Court of Appeals recognized a *Bivens* remedy for a First-Amendment retaliation

4

claim based on actions a border patrol agent took against the plaintiff after the plaintiff complained to the agent's superiors about his conduct. 998 F.3d 370, 385-86, 389-91 (9th Cir. 2021), *reversed*, 142 S. Ct. 1793 (2022).[2] The magistrate noted that the Ninth Circuit's "*Boule* decision contravenes the vast majority of cases declining to find a *Bivens* remedy for First Amendment claims and the Supreme Court's admonition against extending *Bivens* in new contexts," and that "[t]he judges on the Ninth Circuit Court of Appeals themselves appear to be sharply divided." *Gregg I*, 2022 WL 479296, at *5. The magistrate judge also pointed out that the Ninth Circuit's decision "recognized a *Bivens* remedy only for a First Amendment claim of retaliation for exercising free speech, not a First Amendment claim for free exercise of religion." *Id.* (citation omitted).

The magistrate judge recommended that Plaintiff's "*Bivens*-based First Amendment claims [in *Gregg I*] be dismissed with prejudice." *Id.* No objections were filed in *Gregg I*, and the district court judge adopted the recommendation. 2022 WL 484965, at *1.

**B. Reversal of *Boule***

Approximately four months later, the Supreme Court issued its decision in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). The Supreme Court again "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*, 142 S. Ct. at 1803 (quoting *Ziglar*, 137 S. Ct. at 1856-57).

> When asked to imply a *Bivens* action, our watchword is caution. If there are sound reasons to think Congress might

---

[2] The Supreme Court's reversal of *Boule* was issued approximately five months after the magistrate judge issued the report and recommendation in *Gregg I*.

5

> doubt the efficacy or necessity of a damages remedy, the courts must refrain from creating it. Even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy. Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie.

*Id.* (quotations and citations omitted).

Reversing the Ninth Circuit, the Supreme Court held "that there is no *Bivens* cause of action for . . . [a] First Amendment retaliation claim." *Id.* at 1807. The Supreme Court observed that there were "many reasons to think that Congress, not the courts, is better suited to authorize such a damages remedy." *Id.* The Supreme Court was particularly focused on the "acute risks of increasing . . . [social] costs." *Id.*; *see id.* ("Recognizing any new *Bivens* action 'entail[s] substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

> A plaintiff can turn practically any adverse action into grounds for a retaliation claim. And, because an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on retaliatory intent may be less amenable to summary disposition. Even a frivolous retaliation claim threatens to set off broad-ranging discovery in which there is often no clear end to the relevant evidence.
>
> Undoubtedly, then, the prospect of personal liability under the First Amendment would lead to new difficulties and expense. Federal employees faced with the added risk of personal liability for decisions that they believe to be a correct response to improper activity would be deterred from carrying out their duties. We are therefore convinced that, in light of these costs, Congress is in a better position to decide

6

> whether or not the public interest would be served by imposing a damages action.

*Id.* (quotations and citations omitted).

### C. *Gregg II*

In the instant action, which the Court will refer to as *Gregg II*, Plaintiff again alleges that Defendant retaliated against him on the basis of his religion and for filing grievances against him. *See, e.g.*, *Gregg II* Compl. at 1-2 (alleging Defendant "punish[ed him] for his religious beliefs," "embarked upon a campaign of reprisal . . . against Plaintiff . . . and his religious beliefs," and took action against Plaintiff because he "sought redress of his grievances").

Plaintiff's allegations in *Gregg II* closely mirror, and in some cases are identical to, his allegations in *Gregg I*. In *Gregg II*, Plaintiff again alleges that Defendant did not schedule and facilitate religious observances he requested, *compare Gregg I* Am. Compl. at 7, ECF No. 28 in No. 21-cv-1180, *with Gregg II* Compl. at 2; limited his purchase of religious medallions "to a selection of 3 pewter costume jewelry Mjollnir Medallions that [Defendant] chose without consult, yet other religions were allowed to choose freely from Silver," *Gregg II* Compl. at 2; *compare with Gregg I* Am. Compl. at 4, 5; was unprofessional and disrespectful of his religious beliefs when Plaintiff tried to work through the matter with him, which culminated in Plaintiff filing complaints against Defendant and Defendant turning staff against him, *compare Gregg I* Am. Compl. at 5 *with Gregg II* Compl. at 3; falsely claimed that the religious observance of Einherjar was not an approved observance and "accus[ed the] group spokesperson" of not properly

7

requesting the observance, *Gregg II* Compl. at 3; *compare with Gregg I* Am. Compl. at 5-6; refused to follow the ceremonial meal procedure for the High Feast of Yule, *compare Gregg I* Am. Compl. at 6 *with Gregg II* Compl. at 3-4; showed favoritism to inmates practicing Catholicism, *compare Gregg I* Am. Compl. at 7 with *Gregg II* Compl. at 4; and attempted to destroy the sacred juniper bush in the outdoor worship area, *compare Gregg I* Am. Compl. at 7 with *Gregg II* Compl. at 4.

In addition, Plaintiff alleges that Defendant was not present to accommodate the "'Winter Finding' blot" at the time scheduled; informed Plaintiff "he was considering . . . disposing of [the Odinnist/Asatru] Religious Stali (Altar)"; and refused Plaintiff's request that he not be present for the "Yule Blot" and have no further involvement in making arrangements for the Odinnist/Asatru practitioners. *Gregg II* Compl. at 4.

Excepting out the cover pages and Exhibit 36970, the exhibits submitted in connection with *Gregg II* are the same as those submitted in connection with *Gregg I*. *Compare Gregg I* Exhibits, ECF No. 28-1 in No. 21-cv-1180, *with Gregg II* Exhibits, ECF No. 1-4.

### III. ANALYSIS

Defendant moves for dismissal on the basis of res judicata and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### A. No Response Filed

As stated above, despite being granted an extension of time in which to do so, Plaintiff failed to file a response to Defendant's motion. This alone is arguably grounds for granting Defendant's motion. *See, e.g.*, *Cox v. Harpstead*, No. 22-cv-478 (PJS/DJF),

2022 WL 16541218, at *2 (D. Minn. Sept. 21, 2022), *report and recommendation adopted*, 2022 WL 16541087 (D. Minn. Oct. 28, 2022); *Christensen v. PennyMac Loan Servs.*, No. 12-cv-2995 (SRN/JSM), 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013). Indeed, in the Court's orders setting deadlines for Plaintiff to file his response, the Court cautioned Plaintiff that a failure to comply could result in "complete or partial dismissal with prejudice." ECF Nos. 33 at 2, 35 at 2. The Court will, however, exercise its discretion and consider Defendant's motion on the merits in the interests of completeness.

### B. *Gregg I* Claims Barred by Res Judicata

"Res judicata operates so that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Brown v. Kansas City Live, LLC*, 931 F.3d 712, 714 (8th Cir. 2019) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *see also, e.g.*, *Midwest Disability Initiative v. JANS Enters., Inc.*, 929 F.3d 603, 607 (8th Cir. 2019); *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008). "Adherence to the doctrine of res judicata saves judicial energy, prevents harassment of the defendant, and promotes expeditious resolution of controversies." *Seenyur v. Coolidge*, No. 16-cv-3832 (WMW/BRT), 2017 WL 9249431, at *3 (D. Minn. Sept. 22, 2017) (quotation omitted), *report and recommendation adopted*, 2018 WL 400758 (D. Minn. Jan. 12, 2018). "Dismissal on the basis of res judicata at the pleading stage is appropriate if the defense is apparent on the face of the complaint." *Magee v. Hamline Univ.*, 775 F.3d 1057, 1058-59 (8th Cir. 2015) [hereinafter *Magee II*] (citing

9

*C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012)); *see also Midwest Disability Initiative*, 929 F.3d at 607.

"The preclusive effect of a prior federal court judgement is determined by federal law." *Seenyur*, 2017 WL 9249431, at *3; *see also, e.g.*, *Magee v. Hamline Univ.*, 1 F. Supp. 3d 967, 973 (D. Minn. 2014) [hereinafter *Magee I*].

> To establish that a claim is barred by res judicata a party must show: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action.

*Yankton Sioux Tribe*, 533 F.3d at 639 (quotation omitted); *accord Midwest Disability Initiative*, 929 F.3d at 607; *Magee II*, 775 F.3d at 1059. "[A] claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Yankton Sioux Tribe*, 533 F.3d at 641 (quoting *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990)); *accord Midwest Disability Initiative*, 929 F.3d at 610.

The four res judicata requirements are satisfied here as to Plaintiff's reasserted *Bivens* claims based on the same alleged violations of his constitutional rights by Defendant asserted in *Gregg I*. Plaintiff's *Bivens*-based claims in *Gregg I* were dismissed with prejudice for failure to state a claim, resulting in a final judgment on the merits. *See Magee I*, 1 F. Supp. 3d at 975. There was proper jurisdiction over *Gregg I*, with both subject-matter (federal question, 28 U.S.C. § 1331) and personal jurisdiction (all parties resided in the District) present. *See Seenyur*, 2017 WL 9249431, at *4. Plaintiff and Defendant were both parties to *Gregg I*. And, the gravamen of Plaintiff's claims—that

10

Defendant violated his constitutional rights by discriminating against his religion and retaliating against him—is based on the same nucleus of operative facts as the claims in *Gregg I*. Accordingly, Plaintiff's *Bivens* claims based on the same alleged violations of his constitutional rights by Defendant asserted in *Gregg I* are barred by res judicata.

### C. *Bivens* Remedy Unavailable for "New Claims"

"Claim preclusion . . . does not apply to claims that did not exist when the first suit was filed." *Lundquist v. Rice Mem'l Hosp.*, 238 F.3d 975, 977 (8th Cir. 2001); *see also Baker Grp., L.C. v. Burlington N. & Santa Fe Ry. Co.*, 228 F.3d 883, 886 (8th Cir. 2000).

There are a handful of new allegations in *Gregg II* that were not present in *Gregg I*, namely, Defendant's failure to facilitate the "'Winter Finding' blot," threat to dispose of the "Religious Stali (Altar)," and denial of a request that he not attend Yule or have further involvement with the religious needs of Odinnist/Asatru practitioners. *Gregg II* Compl. at 4. These instances of alleged religious discrimination and retaliation took place in September and December 2021, following the filing of the Amended Complaint in *Gregg I* but before *Gregg I* was dismissed.

Ultimately, the Court need not determine whether Plaintiff could have brought claims based on these additional alleged instances of religious discrimination and retaliation in *Gregg I*. Even assuming for sake of argument that such claims did not arise out of the same nucleus of operative fact as the claims in *Gregg I* and that Plaintiff could not have brought them in the prior action, this does not change the legal unavailability of such claims, i.e., that such claims are not cognizable under *Bivens*. *See Egbert*, 142 S. Ct. at 1807-09; *Gregg I*, 2022 WL 479296, at *3-5.

## IV. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss, ECF No. 29, be **GRANTED**.


Dated: January  11  , 2023                    *s/ Tony N. Leung*
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota

                                              *Gregg v. Basile*
                                              Case No. 21-cv-2767 (WMW/TNL)


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).